IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:21-cv-02520-CNS-KAS

OWNERS INSURANCE COMPANY, an Ohio corporation,

    Plaintiff,

v.

LENNAR CORPORATION, a Florida corporation, *et al.*,

    Defendants.

---

**ORDER**

---

## I.   INTRODUCTION

Plaintiff Owners Insurance Company initiated this lawsuit in September 2021, initially suing 19 Defendants, including Lennar Corporation. Only three Defendants remain—Security National Insurance Company (SNIC), QBE Insurance Corporation (QBE), and National General Insurance Company (NGIC).

At the highest level, Owners alleges that Defendants shirked their obligations to defend Lennar, the general contractor of a housing development in the Blackstone Country Club community in Aurora, Colorado, after four sets of homeowners alleged construction defects against Lennar. In June 2023, Owners and Lennar settled their competing insurance-coverage claims. As part of the settlement, Lennar assigned its

1

claims to Owners, including Lennar's three counterclaims asserted against SNIC, QBE, and NGIC, among other subcontractors.

Before the Court is Owners' Motion for Leave to Amend the Scheduling Order to Extend the Deadline to Amend the Pleadings to Include the Claims Assigned by Lennar Corporation to Owners Insurance Company (ECF No. 309). For the reasons below, Owners' motion is GRANTED in part and DENIED in part.

## II.   BACKGROUND[1]

Lennar Colorado, LLC, a subsidiary of Lennar Corporation, constructed several single-family homes in the Blackstone Country Club community (ECF No. 322 at 2).[2] This insurance-coverage lawsuit, and the underlying construction-defect dispute, centers on four of those single-family homes. Lennar Colorado sold homes to the first two Claimants in December 2012, and the other two homes to the other Claimants in February 2013 (ECF No. 322, ¶ 12).

Approximately five years later, Claimants complained of construction defects (ECF No. 321, ¶ 2). In January 2018, Claimants served Lennar Colorado with four Notices of Claim (the Claims) as required by Colorado's Construction Defect Action Reform Act (CDARA) (ECF No. 322, ¶ 22). The Claims described the "defects or deficiencies" as follows: (a) drywall cracks and buckling; (b) foundation wall cracks; (c) doors racked in

---

[1] The following factual recitation is drawn from parties' various motions for summary judgment (ECF Nos. 320–22) and the respective responses and replies. The Court will issue an order on those motions in due course. To the extent the parties disagree over key facts, the Court sets forth the relevant factual dispute for clarity.

[2] The Court generally refers to Lennar Corporation as "Lennar." The Court will use Lennar Colorado when referring to the LLC.

frame; (d) out-of-level floor; (e) lack of proper isolation between doorframes and basement slab; and (f) vertical movement of foundation and/or slab (ECF No. 525-1 at 4).

Unable to settle their Claims, Claimants submitted their Claims against Lennar Colorado to the American Arbitration Association (ECF No. 322, ¶ 26) in April 2019. The arbitration spanned three weeks in April 2021 (*id.*, ¶ 31), and the following month, the panel issued its interim award against Lennar Colorado (*id.*, ¶ 32). The final awards for each Claimant followed in September 2012 (*id.*, ¶ 35).

As with many construction projects, Lennar Colorado entered several subcontracts for various scopes of work. For the framing work on Claimants' homes, Lennar Colorado contracted with Defendant Centerline Builders, LLC (*id.*, ¶ 1). Centerline, in turn, contracted with several of its own contractors, including Defendants Z and S Precision Framing a/k/a ZNS Precision Framing (ZNS), Armando Cedeno's Construction (Cedeno), Gonzalez Construction (Gonzalez), and Pinedo Construction (Pinedo) (collectively, the Subcontractors) (*id.*, ¶¶ 4–7).[3] QBE insured ZNS (*id.*, ¶ 13),[4] and SNIC insured Cedeno, Gonzalez, Pinedo (ECF No. 340, ¶¶ 16–18).[5] Each of these subcontractors were wood-

---

[3] According to Owners, Centerline subcontracted with four additional subcontractors: Defendants CR and G Construction, Global One, Inc., Holquin Construction, Inc., and JF Construction (ECF No. 326-7 at 2).

[4] National Farmers Union issued the policy to ZNS in 2011 (ECF No. 322, ¶ 13). However, because of certain restructuring, QBE admits that it is now financially responsible for this policy (*id.*, ¶ 14; ECF No. 341, ¶ 14).

[5] NGIC is the third Defendant. In its response to NGIC and QBE's Motion for Summary Judgment, Owners agreed to voluntarily dismiss NGIC if QBE agrees that it is financially responsible for ZNS's liability, if any (ECF No. 320 at 20). QBE agreed (ECF No. 338 at 21; *see also* ECF No. 341, ¶ 14). Therefore, the Court will dismiss NGIC from this lawsuit when it issues its rulings on the parties' summary-judgment motions.

3

framing subcontractors. ZNS performed "shim and shave" wood framing, which is the process of shimming and shaving wood studs that are somehow deformed such that the drywall will be straight when it is placed on top of the wood framing (ECF No. 320, ¶ 25). ZNS was paid just $1,053.60 for its work on all four homes and contends that the process is cosmetic only, not structural in nature (ECF No. 341, ¶ 15; *id.* at 27). The SNIC Subcontractors constructed the framing, siding, and exterior decks (ECF No. 321, ¶ 5).

For the houses' concrete work, Lennar Colorado contracted with Denver Concrete, Inc. (DCI) (ECF No. 322, ¶ 11). Owners insured DCI, and because DCI included Lennar Colorado as an additional insured under its Owners insurance policy, Owners insured Lennar Colorado (*id.*).

At the arbitration hearing, pursuant to the DCI Subcontract, Owners defended Lennar Colorado—the only entity sued—at the arbitration (ECF No. 322 at 19). It did so under a full reservation of rights (ECF No. 322, ¶ 25).

On October 22, 2020, approximately 18 months after Claimants submitted their arbitration demands (but five months before the arbitration proceeding), Owners alleges that it tendered the defense and indemnification for the Claims to the Subcontractors and their insurers (ECF No. 322, ¶ 29), which it asserts was ignored (*id.* at 26). QBE outright denies receiving this tender (ECF No. 341, ¶ 29), and SNIC argues that the tender was not effective because the certificate of insurance attached to the tender listed Navigators Insurance Company as Cedeno's insurer (ECF No. 340, ¶ 29).[6]

---

[6] The letter also listed Pinedo and Gonzalez. For the former, the insurer listed is Builders and Tradesmen Insurance Company. But for the latter, SNIC is the listed insurer (*see*

Owners filed this action on September 16, 2021, asserting claims against Lennar Corporation and numerous Subcontractors and Subcontractors' insurers (ECF No. 1, ECF No. 161). Owners alleges that the Subcontractors and their insurers had a duty to defend Lennar Colorado at the arbitration, and if necessary, indemnify it (ECF No. 161 at 22). Defendants argue that they did not have a duty to defend Lennar Colorado because the Claims related to "foundation movement and . . . foundation cracking" (ECF No. 320, ¶ 22; ECF No. 321, ¶ 2). In other words, the cause of the home damage was "earth movement" and had nothing to do with the Subcontractors' framing work (ECF No. 320, ¶ 24). Owners' view is not that narrow. Owners agrees that some of the damage was caused by earth movement, but it also contends that the framing work caused both structural and cosmetic damage to the Claimants' homes (ECF No. 338, ¶ 24). Thus, the Claims triggered Defendants' duty to defend.

Turning to Lennar, Owners brought an unjust enrichment claim against Lennar, and further asked the Court to declare that Lennar was required to reimburse Owners for certain fees and costs Owners incurred in defending and indemnifying Lennar (ECF No. 161 at 21–22). Lennar, in turn, filed counterclaims against Owners for breach of contract and common law and statutory bad faith, and cross-claims against the Subcontractor Insurers for breach of contract for their failure to defend and common law and statutory bad faith (ECF No. 68). In April 2023, Owners and Lennar Corporation reached an agreement in principle to settle their dispute with Lennar agreeing to assign its claims to

---

ECF No. 326-5 at 1). SNIC appears to admit that it received the tender with respect to Pinedo (ECF No. 340, ¶¶ 29–30).

Owners (ECF No. 309 at 6)). The parties finalized their settlement agreement on June 28, 2023 (ECF No. 335 at 4). Twelve days later, Owners sought leave to amend its First Amended Complaint to step into Lennar's shoes and prosecute Lennar's cross-claims against Defendants (ECF No. 309).

### III.  LEGAL STANDARD

The Federal Rules provide that a scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Where, as here, a party is seeking to modify after a scheduling order deadline, the "party seeking leave to amend must demonstrate (1) good cause for seeking modification under Fed. R. Civ. P. 16(b)(4) and (2) satisfaction of the Rule 15(a) standard." *Birch v. Polaris Indus., Inc.*, 812 F.3d 1238, 1247 (10th Cir. 2015) (quoting *Gorsuch, Ltd., B.C. v. Wells Fargo Nat'l Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014)).

To demonstrate good cause pursuant to Rule 16(b)(4), the movant must "show that it has been diligent in attempting to meet the deadlines, which means it must provide an adequate explanation for any delay." *Strope v. Collins*, 315 F. App'x 57, 61 (10th Cir. 2009) (citation omitted). "Rule 16's good cause requirement may be satisfied, for example, if a plaintiff learns new information through discovery." *Gorsuch*, 771 F.3d at 1240 (citation omitted). But a "litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend." *Perez v. Denver Fire Dep't*, 243 F. Supp. 3d 1186, 1200 (D. Colo. 2017) (citation and quotation omitted), *aff'd*, 724 F. App'x 646 (10th Cir. 2018).

6

Moving on to Rule 15(a), Owners is well beyond the deadline to amend as a matter of course. *See* Fed. R. Civ. P. 15(a)(1). It therefore must demonstrate satisfaction of Rule 15(a)(2). Under that rule, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Because Defendants oppose Owners' requested amendment, it may amend only with leave of this Court. However, the Court "should freely give leave when justice so requires." *Id.* "[T]he grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Prejudice typically arises "only when the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (citation and quotations omitted).

## IV.   ANALYSIS

Owners first seeks leave to amend the First Amended Complaint to prosecute claims Lennar assigned Owners (ECF No. 309 at 6). Owners then requests that the Court amend the case caption to reflect that Lennar is no longer a defendant, that Owners is bringing the assigned claims as assignee of Lennar, that Lennar is now a "co-Plaintiff alongside Owners," and to remove all parties from the caption that have settled (ECF No.

309 at 6, 11). Defendants oppose the requested relief (ECF Nos. 330, 331). The Court addresses each request in turn.

### A. Lennar's assigned claims

Owners argues that, following Lennar's full assignment of its rights and claims to Owners, it is now the real party in interest to assert those assigned claims (ECF No. 309 at 7). Defendants raise several arguments in opposition.

Invoking Rule 15(a), QBE argues that amendment would be futile for two reasons. First, Lennar Corporation does not have any viable claims to assign because Lennar Colorado, not Lennar Corporation, is the real party in interest (ECF No. 330 at 5). Second, QBE argues that Lennar pled its claims as contingent on Lennar owing money to Owners, which did not occur (*id.*).

SNIC appears to adopt QBE's arguments in passing, but SNIC primarily argues that Owners cannot establish good cause for amendment because the inquiry is not whether Owners had an adequate explanation for any delay; it is whether Lennar had good cause for not amending its claims in the 18 months since filing its original cross-claims (ECF No. 331 at 7). Further, SNIC argues that Owners is attempting to assert entirely new claims against SNIC (*id.* at 6). Finally, SNIC argues that several Rule 15(a) factors—undue delay, undue prejudice, failure to cure through prior amendments, and futility—require denial of Owners' motion (*id.* at 11–14).

The Court's analysis begins with the Federal Rules, which requires that an "action must be prosecuted in the name of the real party in interest." Fed. R. Civ. P. 17(a)(1). "[I]f a claim has been assigned in full, the assignee is the real party in interest with the right

8

to maintain an action thereon." *Edis v. Edis*, 742 P.2d 954, 955 (Colo. App. 1987). If a "plaintiff's status as a real party in interest depends upon an assignment from the original real party in interest, it is necessary for the plaintiff to prove, in addition to the basic elements of its case, its status as an assignee." *Alpine Assocs., Inc. v. KP & R, Inc.*, 802 P.2d 1119, 1121 (Colo. App. 1990). A plaintiff can generally meet this burden by showing a "full and complete assignment of the claim from an assignor who was a real party in interest with respect to the claim." *Id.*

Here, Owners can show that it is the real party in interest to prosecute Lennar's claims. Owners attached to its motion the settlement agreement between Owners and Lennar (ECF No. 309-1). In no uncertain terms, Lennar, the original real party in interest for those claims, broadly assigned to Owners "any and all" claims, causes of action, and rights Lennar has "against the Subcontractors or Subcontractors' Insurers" (ECF No. 309-1).

Defendants' argument that Lennar has no claims to assign is belied by the fact that Lennar never moved to dismiss the claims filed against it on the basis that it was not the real party in interest. It instead defended the lawsuit for 18 months, filing cross-claims and counterclaims. Had Lennar believed that Owners was improperly piercing the corporate veil, presumably it would have said so. But it did not. Now SNIC is asserting a veil-piercing defense as a shield on Lennar's behalf (ECF No. 330 at 5–6 (citing *Skidmore, Owings & Merrill v. Canada Life, Assur. Co.*, 907 F.2d 1026, 1027 (10th Cir. 1990) for the proposition that parent corporations are treated as separate legal entities from subsidiaries)).

In this instance, the Court is not convinced that this technicality renders amendment futile or otherwise null. Defendants do not suggest that they have been or will be prejudiced by the Lennar Corporation versus Lennar Colorado distinction. Owners has always defined Lennar Corporation broadly to include any other Lennar entity (*see* ECF No. 1 at 2 n.1; ECF No. 161 at 2 n.1). To adopt Defendants' position would be to elevate form over substance, which the Court will not do.

Having determined that Owners has satisfied its burden of showing that it is the real party in interest to prosecute Lennar's cross-claims, the Court quickly turns to the two-part inquiry to determine whether amendment at this juncture is appropriate. *See Birch*, 812 F.3d at 1247. First, Owners must demonstrate good cause for seeking amendment, which may be shown by Owners' diligent efforts to amend as quickly as possible after the relevant triggering event. Here, Owners was diligent in filing its motion to amend: Owners filed its motion 12 days after finalizing the settlement agreement with Lennar. It could not have filed its motion prior to finalizing the settlement agreement because it would not have been the real party in interest at that time. Owners easily satisfies the first requirement.[7]

---

[7] Without authority, SNIC argues that, once Owners "took an assignment from Lennar Corporation of the claims against SNIC, it stepped into Lennar Corporation's shoes with respect to such claims and is bound by Lennar Corporation's prior decisions to not seek relief from SNIC for indemnification or recovery of the 'arbitration costs' and 'post-tender/pre-acceptance' fees" (ECF No. 331 at 11). The Court is not aware of any legal authority to support SNIC's argument. Indeed, Tenth Circuit caselaw focuses on the movant's reason for the delayed amendment, not the assigning party's reasons. *Minter*, 451 F.3d at 1205 (quoting *Foman*, 371 U.S. at 182).

The second requirement asks whether justice so requires amendment. It is Defendants' burden to establish that Owners' late amendment was made in bad faith, that it would be futile, or that it would be unduly prejudicial. *See generally Frank*, 3 F.3d at 1365 (listing potential reasons why justice would not require permitting amendment); *Openwater Safety IV, LLC v. Great Lakes Ins. SE*, 435 F. Supp. 3d 1142, 1151 (D. Colo. 2020) ("The party contesting the motion to amend has the burden of proving that the amendment should be refused on one of these bases."). In the Court's view, the only viable argument at this junction would be prejudice to Defendants.[8] The Tenth Circuit has said that prejudice arises in this situation when amendment will unfairly impact Defendants' defense to the amendment. *See Minter*, 451 F.3d at 1208 ("Most often, this occurs when the amended claims arise out of a subject matter *different from what was set forth in the complaint* and raise significant new factual issues." (emphasis added).

The Court finds that any potential prejudice would not rise to the level contemplated by the Tenth Circuit. Owners' amended claims are not of a new subject matter from what was set forth in the complaint—indeed they are cross-claims previously

---

[8] As noted, Defendants argue that Lennar pled its claims as contingent on Lennar owing money to Owners, which did not occur (ECF No. 330 at 7; ECF No. 331 at 3). Lennar's first cross-claim against Defendants is for breach of contract (ECF No. 68 at 23). In short Lennar alleges that each Subcontractor Insurer breached its duty to defend Lennar against the Claims (*id.*, ¶¶ 56–61), and "*[t]o the extent Owners is entitled to reimbursement of defense costs from Lennar*, Lennar is entitled to reimbursement of those defense costs from each Subcontractor Insurer as a result of each Subcontractor Insurer's breach of its duty to defend" (*id.*, ¶ 62 (emphasis added)). Lennar's bad-faith cross-claims, however, do not contain similar contingency language (*id.* at 23–25). The Court defers ruling on this issue until it issues its order on summary judgment. The parties briefed this issue extensively in their summary judgment papers (*see, e.g.*, ECF No. 320 at 12–13; ECF No. 321 at 20), largely repeating the same arguments raised on opposition to the instant motion.

asserted in this lawsuit. Moreover, each party filed competing summary judgment motions, and each party briefed the issues assuming Owners was prosecuting Lennar's cross-claims—claims which Lennar asserted against Defendants in January 2022, almost two years ago. Put simply, allowing amendment will not unfairly prejudice Defendants' defense. Finally, "Colorado law favors the assignability of claims." *McKenna v. Oliver*, 159 P.3d 697, 699 (Colo. App. 2006). Denying amendment would deprive Owners of its right to prosecute its assigned claims.

In sum, Owners may amend its First Amended Complaint to assert the cross-claims Lennar filed against Defendants. Owners may not, however, assert any new claims against Defendants nor may it attempt to assert against Defendants the counterclaims Lennar filed against Owners.[9]

### B. Amending the case caption

QBE argues that amending the caption would be unfairly prejudicial to QBE because it would imply that Lennar initiated this lawsuit in conjunction with Owners to sue a plethora of recalcitrant subcontractors and insurers (ECF No. 330 at 4). But in reality,

---

[9] Owners has represented to the Court that it is "asserting no new claims" and that "Owners is merely attempting to incorporate the causes of action Lennar has already asserted against SNIC, and is not, in any way, attempting to expand upon, nor add to, Lennar's crossclaims" (ECF No. 35 at 3). The Court presumes and expects that this representation applies with equal force to QBE and NGIC. The Court would not be left guessing had Owners complied with the District Court's Local Rules, which requires a "party who files an opposed motion for leave to amend or supplement a pleading shall attach as an exhibit a copy of the proposed amended or supplemental pleading which strikes through (e.g., ~~strikes through~~) the text to be deleted and underlines (e.g., underlines) the text to be added." D.C.COLO.LCivR 15.1(b). Instead, Owners stated that it "file the redline and clean versions of the proposed Second Amended Complaint within 14 days after the Court issues its ruling on this Motion" (ECF No. 309 at 14).

Owners sued its own insured to recover costs that it expended to defend its insured whereas Lennar only sought to pass through damages, if any, that it may have owed to Owners (*id.*). QBE also opposes removing Defendants from the caption that have settled because those Defendants are still relevant in determining each insurer's proportionate amount of defense fees and costs (*id.*). SNIC does not directly address Owners' request to amend the case caption, except to take issue with Owners' "incorrect framing" that it is merely rearranging the caption as opposed to adding new causes of action (ECF No. 331 at 6).

Courts have discretion to permit amendment, including rearranging a caption. *See generally Frank*, 3 F.3d at 1366. The nonmoving party bears the burden of proving that the amendment would be unduly prejudicial. *See Openwater Safety IV*, 435 F. Supp. 3d at 1151.

The Court finds that removing each Defendant that has settled, including Lennar, from the caption will not be unduly prejudicial to Defendants. It is not uncommon to remove defendants that are no longer part of a case. Parties that have settled or are dismissed may not want their names attached to a lawsuit. As Owners points out, any perceived prejudice can be addressed in the parties' proposed jury instructions, opening statements, and throughout the presentation of evidence (ECF No. 334 at 2). However, the Court will not permit Owners to amend the caption to reflect that Lennar is a co-Plaintiff or that Owners is prosecuting Lennar's assigned claims. If Owners expects Defendants to explain the procedural history of the case to the jury, Owners can do that too.

## V. CONCLUSION

Consistent with the above, Owners' Motion for Leave to Amend the Scheduling Order to Extend the Deadline to Amend the Pleadings to Include the Claims Assigned by Lennar Corporation to Owners Insurance Company (ECF No. 309) is GRANTED in part and DENIED in part. Consistent with this Order, Owners is ordered to file a redlined and clean copy of its Second Amended Complaint within 14 days of the date of this Order.

DATED this day of 18th day of January 2024.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge